IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
|     Plaintiff, ) | |
| ) | |
| vs. ) | NO. CR 08-1632 RB |
| ) | |
| HUMBERTO HUGH LUPE MENDOZA, ) | |
| ) | |
| ) | |
|     Defendant. ) | |

**FINDINGS OF FACT AND CONCLUSIONS OF LAW
AND ORDER DENYING MOTION TO SUPPRESS**

**THIS MATTER** came before the Court on Defendant's Motion to Suppress Evidence [Doc. 40], filed on September 19, 2008. The Court held an evidentiary hearing on this motion on October 8, 2008. Having considered the submissions of counsel, evidence adduced at the hearing, relevant law, and being otherwise fully advised, I issue these findings of fact and conclusions of law and deny Defendant's motion.

**FINDINGS OF FACT**

1. The Indictment charges Defendant with possession with intent to distribute 100 kilograms and more of marijuana, in violation of 21 U.S.C. §§ 841 (a)(1) and (b)(1)(B), and aiding and abetting, in violation of 18 U.S.C. § 2.

2. Defendant is set for call of the calendar on October 31, 2008, and jury trial on the November 10, 2008 trailing docket.

3. Defendant filed his motion to suppress on September 19, 2008, contending that the roving patrol stop of the vehicle driven by Defendant was not justified at its inception and, thus,

violated the Fourth Amendment. The Government filed its Response on October 2, 2008, asserting that United States Border Patrol Agent Jose Pargas had reasonable suspicion to stop the vehicle driven by Defendant.

4.	On the evening of April 23, 2008, United States Border Patrol Agent Jose Pargas was on roving patrol duty in marker Border Patrol vehicle near Hatch, New Mexico. Agent Pargas has served as a Border Patrol Agent for approximately six years and he often performs roving patrol duty in the Hatch area.

5.	At approximately 11:00 p.m., on April 23, 2008, Agent Pargas was parked in a marked Border Patrol vehicle at the intersection of New Mexico Highway 26 and New Mexico Highway 187, just to the northwest of Hatch. At his location, Agent Pargas was able to see traffic coming and going on both roads.

6.	Highway 26 runs from Deming, New Mexico, which is located about 50 miles southwest of Hatch on Interstate 10. Highway 187 runs north through Salem, New Mexico and eventually connects to Interstate 25 approximately twenty miles north of Hatch. To the south of the intersection, Highway 187 becomes New Mexico Highway 185, which intersects with Franklin Street in Hatch. Franklin Street connects Hatch directly to Interstate 25.

7.	Highways 26, 185 and 187 are well-known routes for transporting illegal aliens and drugs. Smugglers use Highway 26 from Deming to Hatch to avoid fixed Border Patrol checkpoints located east of Deming on Interstate 10, and south of Hatch on Interstate 25 and Highway 185.

8.	At the intersection, Agent Pargas did not see much traffic at that time of night. Based on his law enforcement experience, Agent Pargas was aware that smugglers often wait for a Border Patrol shift change because smugglers believe agents might not be out on the roads near such times. Border Patrol rotates its shift changes once per month. On April 22-23, 2008, the shift change was

scheduled at midnight.

9. At 11:16 p.m., Agent Pargas noticed three sets of headlights approaching his location from the west, coming from Deming, on Highway 26. The first vehicle was a brown car, the second vehicle was a maroon or red Buick, and the third vehicle was a Saturn SUV. The vehicles traveled with about one car length between each other at about the speed limit, which was 15 mph or 25 mph. Based on his law enforcement experience, Agent Pargas surmised that the three vehicles were traveling in tandem.

10. The Buick in particular caught Agent Pargas' attention because it was riding low. Based on his law enforcement experience, Agent Pargas knew it is common for persons smuggling drugs to use more than one vehicle in tandem and for one car to be loaded with drugs and to ride low.

11 Each vehicle contained one person. As the vehicles passed Agent Pargas, none of the drivers looked at him. The three vehicles turned toward Hatch on Highway 185.

12. Agent Pargas followed the three vehicles. The drivers of the three vehicles were aware that Agent Pargas was behind them and they continually tapped on their brakes as if they were being overly cautious about obeying the speed limit. A vehicle registration check on the Saturn came back as registered to a person in Albuquerque, New Mexico. Agent Pargas tried to get in front of the Saturn to check the Buick's license plate, but the driver of the Buick continually applied the brakes. As a result, the space between the Buick and the Saturn was insufficient to allow Agent Pargas to read the license plate on the Buick. In that area, Highway 185 has one lane in each direction.

13. As the three vehicles turned left on Franklin Street, Agent Pargas was able to see the license plate on the Buick. The registration check on the Buick came back as "no record on file."

Based on his law enforcement experience, Agent Pargas knew that such a result is indicative of use of the vehicle for illegal activity. All three vehicles displayed New Mexico plates.

14. After the three vehicles turned north onto Interstate 25, Agent Pargas was able to pull in front of the Saturn. Agent Pargas stopped the Buick at about mile marker 43 on Interstate 25, which is about one to two miles north of the on ramp and approximately 83 miles from the international border.

15. Agent Pargas approached the driver of the Buick, who was identified as Defendant. After greeting Defendant, Agent Pargas inquired as to his citizenship. Defendant responded that he was a United States citizen. As Defendant handed his driver's license to Agent Pargas Defendant's hand was visibly shaking.

16. After Agent Pargas stated to Defendant that the license plate check on the Buick came back "no record on file," Defendant explained that the Buick belonged to Defendant's sister. Defendant handed Agent Pargas the registration for the Buick. This conflicts with the "no record on file" result that Agent Pargas received when he requested a check on the license plate. Regardless of this conflict, the "no record on file" response was uncontradicted and not offered for its truth, at any rate, but only as it applies to the agent's actions taken in response thereto.

17. Agent Pargas asked Defendant why he was so nervous. Defendant denied being nervous. Agent Pargas asked where Defendant was coming from and how far north he was going. Defendant responded he was coming from Arizona and going back north to Albuquerque. Defendant stated he had been Arizona a couple of days.

18. In the back seat, in plain view, Agent Pargas noticed two large duffel bags, each measuring approximately four feet long, two feet wide, and two and a half to three feet tall. Agent Pargas asked Defendant why he had so much luggage if he only stayed in Arizona for a couple of

days. Defendant responded that he had intended to stay longer, but he left early after an argument with his girlfriend. Agent Pargas asked Defendant if he had anything in the trunk of the Buick. Defendant responded "no."

19.     Agent Pargas informed Defendant that a canine unit was on the way and would arrive in a few minutes. Defendant agreed to wait and consented to a canine search of the Buick.

20.     Within ten minutes after the stop, United States Border Patrol Agent John Gillette arrived with Nero, a dog trained to detect contraband and concealed persons. After learning that Agent Pargas had obtained Defendant's consent to a canine search of the Buick, Agent Gillette had Nero perform a systematic sniff of the Buick, starting at the rear corner of the trunk. Nero alerted all around the Buick, and indicated at the trunk, by sitting with a pinpoint stare.

21.     Agent Gillette asked Defendant if the Buick was his and Defendant responded that the vehicle belonged to his sister. Noting the large bags, Agent Gillete asked Defendant if he would like to tell Agent Gillette what was in the bags. Defendant responded to Agent Gillette: "You know what it is." Agent Gillette again asked if Defendant knew what was in the bags. Defendant responded: "Weed." Agent Pargas placed Defendant under arrest and secured him in Agent Pargas' vehicle.

22.     The search of the Buick revealed five large duffel bags crammed inside the trunk, in addition to the two large duffel bags on the back seat. The seven duffel bags, two from the back seat and five from the trunk, contained a green leafy substance that tested positive for marijuana. The seven duffel bags contained a total of 376 bundles of marijuana with an approximate weight of 151 kilograms.

23.     The testimonies of Agent Pargas and Agent Gillette were fully credible. Any discrepancies in the testimonies are due to the fact that Agent Gillette arrived on the scene after the

stop and the events occurred over five months before the hearing. To the extent the testimony of Agent Pargas conflicted with the testimony of Agent Gillette, I find the testimony of Agent Pargas to be more reliable.

## CONCLUSIONS OF LAW

1. The Fourth Amendment prohibits unreasonable searches and seizures by the Government. U.S. Const. amend. IV. A traffic stop is valid under the Fourth Amendment when probable cause or reasonable suspicion exists. *United States v. Valenzuela*, 365 F.3d 892, 896-97 (10th Cir. 2004) (probable cause standard); *United States v. Cheromiah*, 455 F.3d 1216, 1220-21(10th Cir. 2006) (reasonable suspicion standard); *United States v. Gandara-Salinas*, 327 F.3d 1127, 1129 (10th Cir. 2003) (same).

2. "Border Patrol agents on roving patrol are permitted 'to stop vehicles only if they are aware of specific articulable facts, together with rational inferences from those facts, that reasonably warrant suspicion' that the occupants are involved in criminal activity." *Cheromiah*, 455 F.3d at 1220 (quoting *United States v. Cantu*, 87 F.3d 1118, 1120 (10th Cir. 1996) and *United States v. Brignoni-Ponce*, 422 U.S. 873, 884 (1975)). Reasonable suspicion does "not rise to the level required for probable cause, and it falls considerably short of satisfying a preponderance of the evidence standard." *United States v. Arvizu*, 534 U.S. 266, 274 (2002). It "represents a 'minimum level of objective justification.' " *United States v. Mendez*, 118 F.3d 1426, 1431 (10th Cir. 1997) (quoting *United States v. Sokolow*, 490 U.S. 1, 7 (1989)).

3. In determining whether there is reasonable suspicion to stop a car in the border area, officers may consider any number of factors, including:

> (1) characteristics of the area in which the vehicle is encountered; (2) the proximity of the area to the border; (3) the usual patterns of traffic on the particular road; (4) the previous experience of the agent with alien traffic; (5) information about recent

illegal border crossings in the area; (6) the driver's behavior, including any obvious attempts to evade officers; (7) aspects of the vehicle, such as a station wagon with concealed compartments; and (8) the appearance that the vehicle is heavily loaded.

*Cheromiah*, 455 F.3d at 1220-21; (*citing United States v. Monsivais*, 907 F.2d 987, 989-90 (1990) and *Brignoni-Ponce*, 422 U.S. at 884-85); *see also United States v. Holguin-Chavez*, 2008 WL 2127848 (May 20, 2007) (unpublished).

4.  In evaluating these factors, a court may not employ a "divide-and-conquer" approach by evaluating and rejecting each factor in isolation. *Arvizu*, 534 U.S. at 277. The ultimate determination of reasonable suspicion depends upon the totality of the circumstances. *Cheromiah*, 455 F.3d at 1221. A border patrol officer may use his experience and training in detecting illegal entry and smuggling when assessing these factors. *Gandara-Salinas*, 327 F.3d at 1129. A court must defer to the officer's ability to distinguish between innocent and suspicious actions. *United States v. De la Cruz-Tapia*, 162 F.3d 1275, 1277-78 (10th Cir. 1998). A review of the totality of the circumstances establishes that Agent Pargas had reasonable suspicion to stop the Buick.

5.  The ultimate determination of reasonable suspicion depends upon the totality of the circumstances. *Cheromiah*, 455 F.3d at 1220-21. The following factors are relevant in determining whether the stop of the Buick was supported by reasonable suspicion: (1) Three vehicles appeared to be traveling in tandem; (2) the second vehicle was riding low; (3) each vehicle had one occupant; (4) the drivers failed to look at Agent Pargas at the intersection; (5) the time of day, 11:16 p.m., was very late in the evening and local traffic was sparse; (6) the time was within one hour of a shift change; (7) Highway 26 and Highway 185 are commonly utilized by persons engaged in the transport of illegal drugs and aliens who wish to avoid fixed checkpoints; (8) the check on the license plate on the Buick came back as "no record on file;" (9) the area in question is approximately 83 miles from the international border; (10) as Agent Pargas followed the vehicles, the drivers

tapped on their brakes and behaved in an overly cautious manner. These factors, considered under the totality of the circumstances, establish that Agent Pargas had reasonable suspicion to believe that the driver of the Buick was engaged in illegal activity. Thus, Agent Pargas had reasonable suspicion to stop the Buick. *See Cheromiah*, 455 F.3d at 1220-21.

6.   In his motion, Defendant attempts to distinguish and explain each factor. In essence, Defendant invites the Court to evaluate and reject each factor in isolation; an approach specifically prohibited by *Arvizu*. *See Cheromiah*, 455 F.3d at 1220-21. In *Arvizu*, the Supreme Court reiterated what it had already established in *Terry v. Ohio*, 392 U.S. 1, 22, (1968), specifically, that "each of [a] series of acts," though "perhaps innocent in itself," may justify "further investigation" when viewed as a whole. *Arvizu*, 534 U.S. at 274-75 (quotation marks omitted). The ten factors identified above, while perhaps innocent in isolation, were sufficient to generate reasonable suspicion of criminal activity when considered together. Based on the totality of the circumstances, the stop of the Buick was supported by reasonable suspicion.

**WHEREFORE,**

**IT IS ORDERED** that Defendant's Motion to Suppress Evidence [Doc. 40], filed on September 19, 2008, is **DENIED**.

_____
**ROBERT C. BRACK**
**UNITED STATES DISTRICT JUDGE**